UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) - PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 22, filed December 20, 2019)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 28, filed February 12, 2020)

PLAINTIFFS' MOTION TO STRIKE THE DECLARATION OF GREGORY S. THOMPSON AND MAP AT AR10887 (ECF No. 30, filed March 6, 2020)

## I.    INTRODUCTION

This case concerns the sufficiency of the environmental review and analysis undertaken by the United States Forest Service prior to approving a proposed forest health and fire mitigation project in the Los Padres National Forest.

Plaintiffs Mountain Communities for Fire Safety ("MCFS"), Los Padres Forestwatch ("LPFW"), and Earth Island Institute ("EII") claim that defendants Kevin Elliott, Forest Supervisor of the Los Padres National Forest, and the United States Forest Service (collectively, "the Forest Service") failed to conduct the environmental analyses mandated by the National Environmental Policy Act ("NEPA") (42 U.S.C. §§ 4321 et seq.), and the National Forest Management Act ("NFMA") (16 U.S.C. §§ 1600 et seq.) before approving the Cuddy Valley Forest Health and Fuels Reduction Project (the "Cuddy Valley Project"), which would remove trees from Mt. Pinos Place region of the Los Padres National Forest.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**   **JS-6**

| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
|---|---|---|---|
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

Plaintiffs filed a complaint alleging violations of NEPA and NFMA on July 29, 2019. See ECF No. 1 ("Compl.") at ¶¶ 76-96. The complaint seeks a declaration that the Cuddy Valley Project violates NEPA and NFMA, and requests an order (i) setting aside the Cuddy Valley Project decision, (ii) compelling the Forest Service to supplement their NEPA analysis with either an Environmental Assessment ("EA") or Environmental Impact Statement ("EIS") that considers and prepares alternatives to the proposed action and complies with NEPA, (iii) compelling the Forest Service to comply with the Los Padres Forest Plan's standards for scenic integrity within the Mt. Pinos Place Management Area, and (iv) enjoining the Forest Service from causing the felling or removing trees within the project area until the Forest Service complies with NEPA and NFMA. Id. ¶ 97. The parties lodged the underlying administrative record with the Court on November 26, 2019. See ECF No. 20. Additional administrative record materials were lodged on December 17, 2019, see ECF No. 21, and February 12, 2020, see ECF No. 27.

Now before the Court are the parties' cross-motions for summary judgment on both of plaintiffs' NEPA and NFMA claims. Plaintiffs filed their opening brief on December 20, 2019. See ECF No. 22 ("Pls. Br."). On February 12, 2020, the Forest Service filed a brief in opposition to plaintiffs' motion, and in support of its own cross-motion. See ECF No. 28 ("USFS Br."). Plaintiffs filed a combined opposition to the Forest Service's motion for summary judgement and a reply in support of their own motion for summary judgment on March 6, 2020. See ECF No. 31 ("Pls. Resp."). On March 27, 2020, the Forest Service filed a reply in support of its motion for summary judgment. See ECF No. 33 ("USFS Resp."). Plaintiffs also moved to strike the declaration of Gregory S. Thompson, and accompanying material, submitted by the Forest Service. See ECF No. 30 ("MTS"). The Forest Service opposed that motion, see ECF No. 32 ("MTS Opp."), and the plaintiffs filed a reply, see ECF No. 35 ("MTS Reply").

The Court held a hearing on May 4, 2020, and issued a tentative ruling. Following the hearing, the Court directed the parties to file supplemental briefs, which the parties have done. See ECF No. 43 ("Pls. Supp. Br."), ECF No. 42 ("USFS Supp. Br."), ECF No. 45 ("Pls. Supp. Resp."), ECF No. 44 ("USFS Supp. Resp."). Having carefully considered the parties' arguments, the Court now finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | 'O' | JS-6 | |
|---|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 | |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | | |

## II.  REGULATORY BACKGROUND

### A.  NEPA

NEPA requires the Forest Service to take a "hard look" at the potential environmental consequences of proposed actions before making a final decision to proceed. See Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350 (1989). NEPA itself "does not mandate particular results, but simply prescribes the necessary process." Id. The statute "merely prohibits uninformed—rather than unwise—agency action." Id. at 351.

NEPA's "necessary process" requires the Forest Service to prepare a detailed environmental impact statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). A "threshold question in a NEPA case is whether a proposed project will 'significantly affect' the environment, thereby triggering the requirement for an EIS." Blue Mountains Biodiversity Project v. Blackwood, 161 F.3d 1208, 1212 (9th Cir. 1998) (quoting 42 U.S.C. § 4332(C). As a preliminary step, the Forest Service may prepare an environmental assessment ("EA") to determine whether the environmental impact of the proposed action is "significant enough to warrant preparation of an EIS." Id. (citing 40 C.F.R. § 1508.9). An EIS is a "detailed statement" on, among other things, the "environmental impact of [a] proposed action" and "alternatives to the proposed action," 42 U.S.C. § 4332(C), while an EA is a "concise public document" which serves to "provide sufficient evidence and analysis for determining whether to prepare an [EIS] or a finding of no significant impact," 40 C.F.R. § 1508.9(a).

Neither an EA nor an EIS is required, however, if, at the outset, the reviewing agency determines that the proposed action falls within an established "categorical exclusion." See 36 C.F.R. § 220.6(a); 40 C.F.R. § 1508.4. Categorically excluded actions are those actions "which do not individually or cumulatively have a significant effect on the human environment, and which have been found to have no such effect" pursuant to procedures adopted by any agency of the federal government charged with implementing NEPA. 40 C.F.R. § 1508.4 (citing 40 C.F.R. § 1507.3). Before a reviewing agency can invoke a categorical exclusion, it must still determine whether there are any "extraordinary circumstances in which the normally excluded action may have a significant environmental effect." 40 C.F.R. § 1508.4. For this reason, an action may be categorically excluded from further NEPA review by the Forest Service only if it falls within certain enumerated categories and "there are no extraordinary circumstances related to the proposed action."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

36 C.F.R. § 220.6(a).  If an action is ineligible for a categorical exclusion, the reviewing agency is required to prepare either an EA or EIS.

### B.    NFMA

The NFMA requires the Forest Service to develop a Land and Resource Management Plan (also known as a forest plan) for each United States National Forest.  A forest plan is a long-term planning document that considers economic and environmental factors and establishes advisory planning goals and binding standards to manage the forest resources within a specific National Forest.  See 16 U.S.C. § 1604(g)(1)–(3).  Forest plans govern the scope and nature of individual projects proposed within a national forest.  See 16 U.S.C. § 1604(i).  Although the Forest Service must ensure that individual projects strictly comply with enumerated forest plan "standards," the Forest Service has greater discretion to "deviate from" a forest plan's non-binding planning "guidelines."  Alliance for the Wild Rockies v. United States Forest Serv., 907 F.3d 1105, 1110, 1114-15 (9th Cir. 2018).

## III.    FACTUAL BACKGROUND

### A.    The Parties

Plaintiff MCFS is a group of residents of Mt. Pinos communities surrounding the Los Padres National Forest.  MCFS's mission is to preserve and protect the community, which includes providing homeowners with information necessary to protect their homes from wildfire.

Plaintiff LPFW is a non-profit corporation headquartered in Santa Barbara, California.  The organization's mission is to protect and restore public lands throughout the Central Coast Region, with a focus on the Los Padres National Forest and nearby public lands.  Its members include individuals who use the Cuddy Valley Project areas for scientific study, recreational enjoyment, aesthetic beauty, and nature photography.

Plaintiff EII is a nonprofit corporation headquartered in Berkeley, California.  The EII's John Muir Project seeks to protect federal public forestland from commercial exploitation that compromises science-based ecological management.  EII members include individuals who regularly use public lands within the Los Padres National Forest, including the Cuddy Valley Project area, for scientific study, recreational enjoyment, aesthetic beauty, and nature photography.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O' | JS-6 | |
|---|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 | |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | | |

The Forest Service is a federal government agency within the Department of Agriculture, which holds the National Forests in trust for the American people and is responsible for actions in the Cuddy Valley Project area. Elliott is the Forest Supervisor of the Los Padres National Forest and is thereby directly responsible for forest management in the Los Padres National Forest and for ensuring that all resource management decisions comply with applicable laws and regulations.

### B.     The Cuddy Valley Project

The Cuddy Valley Project authorizes the Forest Service to implement an array of vegetation treatments—including thinning, brush cutting, pruning, and follow-on burning—across 1,200 acres of the Los Padres National Forest in the Mt. Pinos Place Management Area, which is located in southwestern Kern County near the community of Pinon Pines Estates that borders Los Angeles County just north of Mt. Pinos. See AR3.[1] The project area includes 409 acres of sagebrush scrub and 791 acres of mixed conifer and pinyon-juniper tree stands. See AR2, AR7, AR4-5.

According to findings by the Forest Service, the forest in the project area has grown substantially denser than its historic natural condition, increasing tree mortality risks posed by drought and insects, as well as the risk of severe wildfire. See AR4-5. Fifteen fires began within the project area since 1998, and several of these fires destroyed thousands of acres. See AR2. For example, the 2005 Gorman Fire burned 2,439 acres and the 2013 Grand Fire burned more than 4,500 acres. Id. By implementing the project, the Forest Service intends to reduce fire risk, promote tree health, and improve forest resistance to drought and insects within the project area by reducing density, eliminating competing vegetation, and removing potent fuels. See AR5-7, AR1018.

With respect to the density reductions, the Forest Service proposes to reduce tree stand densities to an average of 80 square feet of "basal area" (i.e, space occupied by trees) per acre—yielding an estimated 93 trees per acre. See AR4, AR6-7. Studies relied on by the Forest Service show that reducing basal area densities below 120 square feet per acre significantly reduces the risk of tree death. Id. Trees of all diameters would be subject to possible felling, but larger, healthier Jeffrey Pine trees and all black oak trees would be retained unless determined to be hazardous. Id. The project contemplates that some of the thinning will be achieved by a commercial harvest, but states that the sale of timber is not

---

[1] Citations to the Administrative Record will take the form "AR."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

the purpose of the project—indeed, the Forest Service estimates that much of the timber removed from thinning may not be commercially salable. See AR7, AR9.

**C.    The Los Padres Forest Plan**

The Cuddy Valley Project area is located within the Mt. Pinos Place Management Area of the Land Management Plan for the Los Padres National Forest ("the Forest Plan"). See AR4766-5123. The "desired condition" guidance for the project area envisions "a naturally evolving and naturally appearing landscape that functions as a big tree (old growth) recreation environment." AR4979. "The valued landscape attributes to be preserved over time" include "big tree (old growth) Jeffrey pine forested areas, the natural appearing backdrop to rural communities," a "rustic mountain-built environment," as well as intact and functioning" linkages for regional habitat. Id. The Forest Plan defines "old growth" as "[o]ld forests, which often contain several canopy layers, variety in tree sizes, species, decadent old trees, and standing and dead woody material." AR4880.

In addition to setting forth this desired condition guidance, the Forest Plan designates the majority of the project area for "high scenic integrity," and requires individual projects approved by the Forest Service within the project area to comply with either the S9 or S10 aesthetic management standards relative to that scenic integrity objective ("SIO"). AR10855-856. The S9 standard requires any individual project approved within the project area to meet the high scenic integrity SIO. See AR4779. An individual project that does not meet the S9 standard will still meet the S10 standard if it satisfies the SIO designation for "moderate (slightly altered)" scenic integrity, and if the Forest Supervisor approves the designation. Id.; see also AR4885-86.

**D.    The Forest Service Reviews The Cuddy Valley Project**

The Forest Service placed the Cuddy Valley Project on its schedule of proposed actions in January 2018. AR1027. In March 2018, the Forest Service published a "Project Proposal" notifying the public of the proposed actions, including the vegetation treatment activities, for the project area. AR1014-27. The publication of the project proposal included a call for comments on the proposal. The Forest Service also sent direct letters requesting comments to interested individuals, organizations, and Native American Tribes, and placed a notice soliciting comments in a local newspaper. AR1004-1013.

The Forest Service received more than 600 comments, although all but 13 of those comments comprised nearly identical form letters. AR16. Four of the 13 unique comments

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

generally favored the project, the other nine expressed opposition. AR361-66. Plaintiffs LPFW and EII submitted comments specifically opposing the application of a categorical exclusion from NEPA to the project and requesting an EA to determine whether a full EIS would be appropriate. AR413, AR380-412. The plaintiffs' comments claimed that nearby projects of similar size, including the Frazier Mountain Project, had been analyzed using an EA, and that the same approach was appropriate here. Id. The plaintiffs also contended that there was no legal basis to grant a categorical exclusion to a commercial timber thinning project of this size, and challenged the scientific efficacy of using density reduction to reduce wildfire risks. AR399-401. In addition to these NEPA-related concerns, developed at some length in the plaintiffs' comments, the plaintiffs also summarily commented that the project "should be designed to minimize impacts to scenic integrity," an apparent reference to the Forest Service's obligations under the NFMA. AR399.

The Forest Service reviewed every unique comment it received, cataloging the comments in a spreadsheet that listed each comment's concerns and included a response or explanation from the Forest Service. AR361-66.

### E.    The Forest Service Authorizes The Project

At the close of the notice and comment period, the Forest Service issued a decision memorandum on November 13, 2018. AR2-24. The memorandum addressed requests that an EA should be undertaken, but concluded that the project is categorically excluded from further NEPA review pursuant to the categorical exclusion set forth in 36 C.F.R. § 220.6(e)(6), which applies to "[t]imber stand and/or wildlife habitat improvement activities." Id. Examples of qualifying activities subject to this exclusion include "[t]hinning or brush control to improve growth or to reduce fire hazard." See 36 C.F.R. § 220.6(e)(6). The memorandum further concluded that no extraordinary circumstances precluded the application of the § 220.6(e)(6) categorical exclusion to the project, and the Forest Service authorized the project without ordering an EA or EIS. AR2-24. The Forest Service also separately addressed plaintiffs' statement about minimizing impacts to scenic integrity. In response to that comment, the Forest Service stated that while "treatments from these projects may be seen" it concluded that "the area would still be viewed as vegetated." AR363. The Forest Service concluded that its decision "is consistent with NFMA and the Forestwide goals, objectives, and standards in the Forest Plan." AR17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

After releasing the decision memorandum, the Forest Service received an additional comment with analysis from plaintiff EII's expert Dr. Chad Hanson. The post-decision comment claimed that the tree density calculations supporting the Forest Service's finding that the project area was overgrown relied upon a 1995 study that, in combination with the Forest Service's data, "creat[ed] a false comparison with the historical tree density data." See AR4497. The Forest Service addressed Dr. Hanson's post-decision comment in a February 5, 2019, letter to the file. See AR360.

Plaintiffs filed this action on July 29, 2019, requesting an order setting aside the project decision, and enjoining the Forest Service from felling any trees in the project area. Compl. ¶ 94.

## IV. LEGAL STANDARD

Judicial review of the Forest Service's application of NEPA and the NFMA to project decisions is governed by the Administrative Procedures Act ("APA"). See Neighbors of Cuddy Mountain v. Alexander, 303 F.3d 1059, 1065 (9th Cir. 2002). Pursuant to the APA "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a particular statute, is entitled to judicial review thereof." 5 U.S.C. § 702. A project approval decision by the Forest Service may be set aside for failure to comply with NEPA or the NFMA under the APA only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "The standard is deferential," River Runners for Wilderness v. Martin, 593 F.3d 1064, 1070 (9th Cir. 2010), and in particular, the Court must grant its "highest deference" to the Forest Service's "technical analyses and judgments within its area of expertise." League of Wilderness Defs. Blue Mountains Biodiversity Project v. Allen, 615 F.3d 1122, 1131 (9th Cir. 2010) (internal citation omitted).

The arbitrary and capricious standard applies "to an agency's determination that a particular action falls within one of [the] categorical exclusions" to NEPA. See Bicycle Trails Council of Marin v. Babbitt, 82 F.3d 1445, 1456 (9th Cir. 1996). Because the Forest Service's "interpretation of the meaning of its own categorical exclusion should be given controlling weight unless plainly erroneous or inconsistent with the terms used in the regulation," the Forest Service need only "adequately explain its decision" to proceed with an action in the absence of an EA or EIS to meet this standard. Alaska Ctr. for Envt. v. U.S. Forest Service, 189 F.3d 851, 857-58, 859 (9th Cir. 1999); see also Kisor v. Wilkie,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

139 S. Ct. 2400, 2414 (2019) (generally reaffirming the rule that an agency's reasonable interpretation of its own regulation is controlling unless plainly erroneous or inconsistent with the regulation) (citing Auer v. Robbins, 519 U.S. 452, 461-63 (1997) and Bowles v. Seminole Rock & Sand Co., 326 U.S. 410, 414 (1945)).  To determine whether the Forest Service meets this deferential standard, the Court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been clear error of judgment."  Alaska Ctr., 183 F.3d at 859 (internal marks and citations omitted).  "Once the agency considers the proper factors and makes a factual determination on whether the impacts are significant or not, that decision implicates substantial agency expertise and is entitled to deference."  Id.

The arbitrary and capricious standard also applies to the Court's analysis of plaintiffs' NFMA claim.  See Forest Guardians v. U.S. Forest Service, 329 F.3d 1089, 1096–97 (9th Cir. 2003) ("Agency actions challenged under the NFMA . . . may be set aside only if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.").  Accordingly, the Court must determine whether the agency's authorization of the Cuddy Valley Project under the NFMA was "based on a consideration of the relevant factors and whether there has been a clear error of judgment."  Id. at 1097.  Just as the Forest Service is entitled to substantial deference with respect to the application of its own categorical exclusions pursuant to NEPA, the Forest Service is entitled to substantial deference to interpret the requirements of its own forest plan pursuant to the NFMA.  See Native Ecosystems Council v. U.S. Forest Service, 418 F.3d 953, 960 (9th Cir. 2005) ("Agencies are entitled to deference to their interpretation of their own regulations, including Forest Plans").

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(a).  In NEPA and NFMA actions limited to an administrative record, courts will grant a cross-motion for summary judgment where the administrative record produced by the parties "permits only one conclusion."  Native Ecosystems Council v. Krueger, 63 F. Supp. 3d 1246, 1249 (D. Mont. 2014), aff'd, 883 F.3d 783 (9th Cir. 2018) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).  "Factual disputes that are irrelevant or unnecessary to the outcome are not considered."  Id. (citing Anderson, 477 U.S. at 247-48).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

## V.  DISCUSSION

Plaintiffs claim the Forest Service's decision to authorize the Cuddy Valley Project with a categorical exclusion from further environmental review violated NEPA and the NFMA.  Each claim is considered below.

### A.  The NEPA Claim

The Forest Service determined it was excused from undertaking any further environmental analysis of the Cuddy Valley Project because the project fell into a categorical exclusion and did not raise any extraordinary circumstances.  See 36 C.F.R. § 220.6(a), § 220.6(e)(6); AR2-24.  Plaintiffs claim that determination violated NEPA (i) because the project is not eligible for § 220.6(e)(6) categorical exclusion, and (ii) because the Forest Service failed to consider the presence of extraordinary circumstances that preclude the application of that categorical exclusion, in any case.

The Court may set aside the Forest Service's decision to apply a categorical exclusion under NEPA only if that decision was arbitrary or capricious.  See Alaska Ctr., 183 F.3d at 856-57.  In making this determination, the Court must defer to the Forest Service's interpretation of the scope and meaning of the categorical exclusion at issue "unless plainly erroneous or inconsistent with the terms used in the regulation" setting forth that exclusion.  Id.

### (1)  Application of The § 220.6(e)(6) Categorical Exclusion

The Forest Service concluded that the Cuddy Valley Project—which authorizes thinning treatments to reduce fire hazard and improve forest health, see AR9—is categorically excluded from further NEPA environmental analysis pursuant to the categorical exclusion set forth in 36 C.F.R. § 220.6(e)(6).  That categorical exclusion applies to "timber stand . . . improvement activities that do not include the use of herbicides or do not require more than 1 mile of low standard road construction."  Id.  Among examples of actions that fall under this exclusion, the regulation lists "[t]hinning or brush control to improve growth or to reduce fire hazard" and "[p]rescribed burning to reduce natural fuel build-up and improve plant vigor."  Id. at §§ 220.6(e)(6)(ii), (iv).  Because the Cuddy Valley Project does not involve herbicides or the construction of more than 1 mile of road, and because the Cuddy Valley Project is intended to mitigate fire risks and insect- and drought-related plant mortality, the Forest Service decided that the Cuddy Valley

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O'    JS-6 | |
|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

Project's proposed stand thinning activities fall within the § 220.6(e)(6) categorical exclusion for timber stand improvement. See AR2-24.

Plaintiffs contend that the § 220.6(e)(6) categorical exclusion is inapplicable to the Cuddy Valley Project because a provision in the "Silvicultural Practices" section of the "Timber Management" chapter of the Forest Service Manual ("FSM")—a provision which plaintiffs claim is incorporated into the Los Padres National Forest Plan—defines "timber stand improvement" as an action directed to trees "not past the sapling stage." See FSM § 2470.5. Since the Cuddy Valley Project proposes to thin tree stands of all diameters (with some exception) and not just saplings, the plaintiffs contend that the § 220.6(e)(6) categorical exclusion cannot apply. See Pls. Br. at 19-23; Pls. Resp. at 2-7. The Forest Service acknowledges that its contemplated thinning activities would affect non-sapling tree stands, but responds that the FSM is non-binding guidance, that its definition of "timber stand improvement" was not incorporated into the Los Padres National Forest Plan, and that, even if it were incorporated and mandatory, a single forest plan's definition of timber stand improvement has no bearing on separate regulations setting forth the scope of a categorical exclusion from NEPA. See USFS Br. at 17-21; USFS Resp. at 4-8.

The Court agrees with the Forest Service. Whether or not the FSM § 2470.5 definition of "timber stand improvement" is a binding standard incorporated into the Los Padres National Forest Plan—a document issued pursuant to the NFMA, and whose standards are enforceable under the NFMA, see 16 U.S.C. § 1604—the definition would not govern or inform the Forest Service's NEPA analysis because it does not apply (or even relate to) to the Forest Service regulations contained in 36 C.F.R. § 220.6 that implement the Forest Service's separate NEPA obligations. Plaintiffs cite no authority for the proposition that the definition applies to those regulations, or even in support of the more general proposition that a mandate in a single NFMA-issued forest plan could bind the Forest Service's interpretation of its own separate NEPA regulations. The only case plaintiffs cite that comes close is Cowpasture River Preservation Association v. Forest Service, 911 F.3d 150 (4th Cir. 2018) (cited in Pls. Resp. at 3-4). But the FSM definition incorporated into the forest plan that was held to provide "further guidance" on the Forest Service regulations at issue in that case (i) related to the Forest Service's obligations under the NFMA (not NEPA), and (ii) did so expressly. Id. at 168. The case accordingly does not support applying the § 2470.5 definition, at issue here, to the Forest Service's NEPA obligations, and certainly not in the absence of any express link.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 | |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | | |

Nor is there any evidence in the record that the Forest Service intended to limit its authority to apply the categorical exclusion contained in § 220.6(e)(6) by promulgating the FSM § 2470.5 definition. The definition appears in a FSM subchapter addressing the Forest Service's silvicultural practices (i.e., its efforts to guide the growth and quality of timber), but there is a more detailed chapter in the Forest Service Handbook ("FSH") (which implements the FSM) that specifically addresses the Forest Service's application of categorical exclusions in accordance with NEPA, and that more specific chapter asserts no such restriction. See FSH § 1909.15.30 (National Environmental Policy Act Handbook, "Categorical Exclusion from Documentation") (updated Sept. 18, 2018); see also Cleveland v. United States, 546 F. Supp. 2d 732, 740 n.4 (N.D. Cal. 2008) (explaining that "[t]he FSH is the principal source of specialized guidance and instruction for carrying out the direction issued in the FSM"). It is a "commonplace" interpretive canon "that the specific governs the general," and that "is particularly true where," as here, the rulemaking body "enacted a comprehensive scheme and has deliberately targeted specific problems"—in this case, how to conduct an environmental analysis pursuant to NEPA—"with specific solutions"—in this case, following the guidance set forth in the FSH. RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012) (internal citations and marks omitted).

The Court accordingly concludes that the FSM § 2470.5 definition of "timber stand improvement" does not govern its application of the § 220.6(e)(6) categorical exclusion. The question is therefore whether the Forest Service considered "the relevant factors" before applying that categorical exclusion, reached its decision without "clear error of judgment," and "adequately explained" itself. Alaska Ctr., 183 F.3d at 859.

The Forest Service has satisfied this criteria. Exercising its discretion, the Forest Service considered the record and determined that the tree stand thinning activities proposed by the Cuddy Valley Project to prevent fires and improve plant health amounted to "timber stand . . . improvement activities" (akin to the given example of "[t]hinning . . . to improve growth or to reduce fire hazard") that are categorically excluded from further NEPA review. See 36 C.F.R. § 220.6(e)(6). That reasonably consistent interpretation and application of § 220.6(e)(6)—whose plain language does not include any restrictions on tree diameter, tree size, or commercial harvesting, and which confers discretion upon the Forest Service to determine how best to "reduce fire hazard" and "improve growth"—does not evince any errors of judgment and is entitled to "controlling weight." Alaska Ctr., 183 F.3d at 859; see also Kisor, 139 S. Ct. at 2414. Further, the Forest Service explained its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

decision in a comprehensive decision memorandum that addressed comments, including those submitted by plaintiffs, advocating a different approach.  See AR2-24. [2]

---

[2] To reach this eligibility determination, the Forest Service also addressed and distinguished the analysis submitted in Dr. Hanson's post-decision comment, even though it had no apparent obligation to do so.  See AR360 (Forest Service letter to file). The regulation cited by plaintiffs for the proposition that the Forest Service did have such an obligation—40 C.F.R. § 1502.9—only requires a reviewing agency to supplement an EIS to address "significant new circumstances or information" released following decision.  Id. § 1502.9(c)(1)(ii) (obligation to prepare new supplement in these circumstances only applies to a "draft or final environmental impact statements"). While an agency "[m]ay also prepare supplements" to other determinations—like the application of a categorical exclusion—"when the agency determines that the purposes of [NEPA] would be furthered by doing so," there is no comparable obligation to supplement a decision memorandum applying a categorical exclusion.  Id. § 1502.9(c)(2).

In any event, the Forest Service's analysis distinguishing Dr. Hanson's comment, and affirming its finding that the Cuddy Valley Project is eligible for a categorical exclusion, is also reasonable.  Even to the extent the Court is required to scrutinize the Forest Service's categorical exclusion decision for "accurate scientific analysis," Idaho Sporting Congress v. Thomas, 137 F.3d 1146, 1150 (9th Cir. 1988) (holding an EA to this standard) (cited by plaintiffs)—and it is not clear that such scrutiny is permitted, see Allen, 615 F.3d at 1131 (according "highest deference" to the Forest Service's "technical analyses and judgments within its area of expertise"); Lands Council v. McNair, 537 F.3d 981, 998 (9th Cir. 2008) (en banc) (same)—the Forest Service's analysis of tree stand density data, and in particular its reliance on the Minnich (1995) and other studies (in combination with tree stand exams and site visits) to reach its density estimates, was well-supported.  See AR360.

That plaintiffs' expert ultimately disagrees with the Forest Service's calculation does not, by itself, render the Forest Service's conclusion arbitrary and capricious.  See Price Rd. Neighborhood Ass'n, Inc. v. DOT, 113 F.3d 1505, 1511 (9th Cir. 1997) (holding that an agency has "discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive"); e.g., Native Ecosystems Council v. Weldon, 232 F. Supp. 3d 1142, 1153-54 (D. Mont. 2017) (rejecting argument that the Forest Service violated NEPA by relying on data from a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O'   JS-6 | |
|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

The Forest Service's determination that the Cuddy Valley Project is eligible for the § 220.6(e)(6) categorical exclusion is therefore not arbitrary or capricious.  See, e.g., All. for the Wild Rockies v. Weber, 979 F. Supp. 2d 1118, 1123, 1138 (D. Mont. 2013), aff'd, 639 F. App'x 498 (9th Cir. 2016) (upholding Forest Service's decision to apply § 220.6(e)(6) categorical exclusion to forest "thinning" project intended to "promote stand health and vigor . . . and to reduce future wildland fire risk").

### (2)   Presence of Extraordinary Circumstances

Even if the Cuddy Valley Project is eligible for the § 220.6(e)(6) categorical exclusion, plaintiffs contend that the Forest Service's decision to apply it in this case is arbitrary and capricious because the Forest Service failed to consider the presence of extraordinary circumstances that should have precluded its application.  See Pls. Br. at 23-32; Pls. Resp. at 7-13.  Specifically, plaintiffs contend that the Forest Service was obligated to consider the "intensity factors" set forth in 40 C.F.R. § 1508.27, including in particular factors related to impacts on "public health or safety" and impacts "likely to be highly controversial."  Id.

The Forest Service agrees that a project eligible for a categorical exclusion may only receive such treatment if "there are no extraordinary circumstances related to the proposed action,"  36 C.F.R. § 220.6(a), and acknowledges that its decision memo did not formally address the 40 C.F.R. § 1508.27 intensity factors, but responds that the promulgation of 36 C.F.R. § 220.6 in 2013 limits the Forest Service's mandatory review of possible "extraordinary circumstances" to the "resource conditions" set forth in § 220.6(b), eliminating any obligation to also consider the "intensity factors" contained within 40 C.F.R. § 1508.27.  See USFS Br. at 24-27; USFS Resp. at 8-11.

The Court agrees.  Although the Ninth Circuit has not yet addressed the question, the Sixth Circuit relying on Ninth Circuit authority squarely rejected plaintiffs' position and held that the Forest Service has no obligation to consider the § 1508.27 as part of its "extraordinary circumstances" analysis when applying a categorical exclusion under NEPA.  See Sierra Club v. U.S. Forest Serv., 828 F.3d 402, 411 (6th Cir. 2016) (holding that the Forest Service "was not required . . . to evaluate these [§1508.27] factors" because the "resource conditions" listed in § 220.6(b) "necessarily take into account the NEPA-

scientific study that plaintiffs challenged when Forest Service "adequately explained" its reasoning).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'    JS-6

| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
|---|---|---|---|
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

wide [regulations] in § 1508.27," and that those resource conditions "set forth . . . how the agency must determine whether an extraordinary circumstance exists"). The Sierra Club court relied in part on the Ninth Circuit's decision in Center for Biological Diversity v. Salazar, 706 F.3d 1085 (9th Cir. 2013), which held that the United States Bureau of Land Management ("BLM") was not required to consider the factors set forth in a related NEPA-wide regulation (40 C.F.R. § 1508.25) to determine whether extraordinary circumstances prevented its application of a categorical exclusion. Id. at 1097-98. In Salazar, a case involving the BLM's decision to permit a mining company to resume mining operations at a uranium site, the Ninth Circuit explained that requiring BLM to review the § 1508.25 factors in addition to the extraordinary circumstances factors already set forth in the BLM's own regulations before applying a categorical exclusion would be "inconsistent with the efficiencies that the abbreviated categorical exclusion process provides." Id. at 1097. The Sixth Circuit's ruling in Sierra Club effectively extended the Ninth Circuit's reasoning in Salazar, as applied to the BLM, to the Forest Service, now that the Forest Service has also issued its own extraordinary circumstances factors in the form of the resource conditions. The Court finds that reasoning and decision persuasive, and adopts it here.

The two Ninth Circuit decisions cited by plaintiffs, supposedly to the contrary, predate the Forest Service's promulgation of the Forest Service specific resource conditions in § 220.6(b) and/or involve different agencies and regulations not similarly situated. Cf., e.g., Alaska Ctr., 189 F.3d at 859 (holding in 1999, before the Forest Service promulgated § 220.6, that Forest Service was required to consider the § 1508.27 factors); Jones v. Gordon, 792 F.2d 821, 827 (9th Cir. 1986) (holding that the National Oceanic and Atmospheric Administration ("NOAA"), not the Forest Service, was required to consider the § 1508.27 factors, but only because an NOAA directive required such review). And while Earth Island Institute v. Elliott, 318 F. Supp. 3d 1155 (E.D. Cal. 2018)—the only post-2013 case cited by plaintiffs on this point—cites § 1508.27 once for the proposition that the Forest Service must consider "both context and intensity" to determine whether any extraordinary circumstances preclude the application of a categorical exclusion, id. at 1163, the district court in substance only analyzed the resource conditions to conclude that the Forest Service's finding of no extraordinary circumstances was sound, id. at 1183-88.

The substantive approach taken by the district court in Earth Island Institute is not only consistent with the Sixth Circuit's persuasive decision in Sierra Club, but also aligns with more recent decisions by the Ninth Circuit that have indicated, without expressly holding, that the Forest Service need only review the resource conditions to satisfy its NEPA obligations before applying a categorical exclusion. See., e.g., Ctr. for Biological

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 | |
|---|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 | |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | | |

Diversity v. Ilano, 928 F.3d 774, 782 (9th Cir. 2019) (holding that when the Forest Service "conduct[s] an extraordinary circumstances inquiry," it "must first" consider the § 220.6(b) resource conditions to "determine whether the proposed action involves certain natural resources present in the area," and affirming district court's conclusion that application of categorical exclusion was not arbitrary or capricious, without any analysis of § 1508.27); Greater Hells Canyon Council v. Stein, 796 F. App'x 396, 399 (9th Cir. 2020) (same).

Having concluded that the Forest Service was not required to consider the § 1508.27 "intensity factors" to determine whether or not extraordinary circumstances precluded the application of the § 220.6(e)(6) categorical exclusion to the Cuddy Valley Project,[3] the Court turns to whether the Forest Service sufficiently considered whether the project implicated any "significant environmental effect" that presents an extraordinary circumstance necessitating "further environmental impact analysis." Ilano, 927 F.3d at 781 (citing 40 C.F.R. § 1508.4). "If there are no extraordinary circumstances, then the agency can invoke the categorical exclusion from NEPA compliance." Id. at 782 (citing 36 C.F.R. § 220.6(a)). Here, the Forest Service analyzed each resource condition in § 220.6(b) and found no extraordinary circumstances that obligated additional review. See AR9-16. Because that analysis considered "the relevant factors" and reached a conclusion without any "clear error of judgment," the Forest Service's determination that invoking the § 220.6(e)(6) categorical exclusion would not raise any extraordinary circumstances cannot be said to be arbitrary or capricious. Alaska Ctr., 183 F.3d at 859.

---

[3] Because the Court concludes that that the Forest Service was not required to consider the 40 C.F.R. § 1508.27 intensity factors, plaintiffs' supplemental authority, Bark v. United States Forest Serv., --- Fed. App'x ----, 2020 WL 1656447 (9th Cir. Apr. 3, 2020), is inapposite. In that case, the Ninth Circuit held that the Forest Service's failure to prepare an EIS was arbitrary and capricious because it relied on controversial science that, pursuant to § 1508.27, required further analysis in an EIS. Id. at *1-2. But the Forest Service was required to consider the § 1508.27 factors in that case because it had prepared an EA, and those factors unequivocally apply to an EA. See 40 C.F.R. § 1508.27(b)(4), § 1508.27(b)(5). The cited holding in Bark has no relevance in this case, where the Forest Service's application of a categorical exclusion—which is not subject to § 1508.27—is at issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

\*       \*       \*       \*       \*

For the foregoing reasons, the Forest Service's application of the § 220.6(e)(6) categorical exclusion was not arbitrary or capricious, and the Forest Service is entitled to summary judgment on plaintiffs' NEPA claim.

## B.    The NFMA Claims

Plaintiffs claim that the Forest Service's decision to approve the Cuddy Valley Project violated the NFMA because the Forest Service failed to consider (i) the aesthetic management standards, and (ii) the desired conditions guidance, set forth in the Forest Service's Los Padres Forest Plan.

Because the arbitrary and capricious standard also applies to the Court's analysis of plaintiffs' NFMA claims, the Forest Service's decision will not be set aside so long as it was "based on a consideration of the relevant factors" and not the result of a "clear error of judgment." Forest Guardians, 329 F.3d at 1097. To make that determination, the Court must defer to the Forest Service's interpretation of the Los Padres Forest Plan so long unless plainly inconsistent. Native Ecosystems Council, 418 F.3d at 960.

Each of plaintiffs' contentions is addressed below.

### (1)    Aesthetic Management Standards

In their scoping comments, plaintiffs stated that the Cuddy Valley Project "should be designed to minimize impacts to scenic resources" since "[m]ost of the Project Area is characterized as having a 'high' scenic integrity objective according to the Land Management Plan for the Los Padres National Forest." AR399. The Forest Service contends that it addressed this concern in its decision memorandum by stating that although "treatments" from the project "may be seen," the project area "would still be viewed as vegetated." AR363.

Plaintiffs contend that this response is inadequate because "[a] project or activity approval document must describe how the project or activity is consistent with applicable plan components," 36 C.F.R. § 219.15(d), including in this instance the aesthetic management standards set forth in the Los Padres National Forest Plan, see AR10855-856. The Forest Service answers that the project is consistent with the forest plan's S9 and S10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
|---|---|---|---|
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

aesthetic management standards,[4] and although it acknowledges that its decision memorandum approving the project did not specifically address compliance with these standards, the Forest Service contends that it was not obligated to do so because the approval document requirements of § 219.15(d) do not apply to projects subject to forest plans (like the Los Padres National Forest Plan) that predate its promulgation.

The Court agrees with the Forest Service. While the Court's tentative ruling previously found the Forest Service's interpretation of § 219.15(d) unsupported by binding circuit authority, days before the hearing on these motions, the Ninth Circuit issued an opinion flatly holding that § 219.15(d) "does not apply" to older forest plans that predate its enactment. See Oregon Nat. Desert Ass'n v. United States Forest Serv., 957 F.3d 1024,

---

[4] The Forest Service also contends that the project falls within a wildland urban interface ("WUI") defense zone, such that the aesthetic management standards do not even apply and the Forest Service is not required to ensure compliance with them. See USFS Br. at 41-42 (citing AR4778, setting forth this exclusion). The Forest Service's argument is predicated on a map of the WUI defense zone, see AR10887, and an extra-record declaration from Gregory S. Thompson explaining that the Forest Service considered the WUI defense zone, and the exclusion from the aesthetic management standard, in the development and approval of the project. Id. at 41 n.11.

Plaintiffs move to strike the declaration and the map because they are not part of the administrative record. See MTS. The Forest Service contends that the Court need not strike and may consider the materials because the APA permits courts to accept extra-record material that explains the basis for an agency's decision and do not simply provide after the fact justifications. See Asarco Inc. v. Envtl. Prot. Agency, 616 F.2d 1153, 1159-60 (9th Cir. 1980); e.g., Forest Serv. Employees for Envtl. Ethics v. United States Forest Serv., 796 F. App'x 390, 392 (9th Cir. 2020) (district court did not abuse its discretion by considering post-decision declarations from the Forest Service that demonstrated compliance with Forest Service standards).

Because as explained below the Court concludes that the Forest Service's consideration of the aesthetic management standards was not arbitrary or capricious on other grounds, the Court need not rely on or consider the contested supplemental materials involving the WUI defense zone, and the motion to strike those materials is **DENIED AS MOOT**.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 | |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | | |

---- n.12 (9th Cir. 2020) (citing 36 C.F.R. § 219.17(c)). Plaintiffs now concede that the Ninth Circuit's decision "dispose[s] of the applicability of 36 C.F.R. § 219.15(d)" to its NFMA claim as it relates to the aesthetic management standards. See Pls. Supp. Br. at 8. The Forest Service's failure to comprehensively address the aesthetic management standards in the decision memorandum is accordingly not a basis to conclude that its decision to proceed with the project was arbitrary and capricious.

Nor is the Forest Service's ultimate determination that the project complies with the aesthetic management standards of the NFMA—as detailed in subsequent briefing—arbitrary and capricious. See Conservation Cong. v. United States Forest Serv., 409 F. Supp. 3d 861, 879 (E.D. Cal. 2019) (permitting the Forest Service to "supplement the record with a response" to explain its decision where its neglect to previously address certain issues in a decision memorandum was excused). Contrary to plaintiffs' position that the Forest Service "can point to nothing in the record that shows they complied with Standards S9 and S10," Pls. Resp. at 15, the Court finds that the Forest Service could reasonably conclude from the administrative record that the project satisfies the SIO requirements (either to maintain "high" scenic integrity pursuant to S9, or a one-level drop to "moderate" scenic integrity pursuant to S10 with approval of the Forest Supervisor) set forth in the forest plan.

The Forest Service could reasonably conclude that the Cuddy Valley Project meets standard S9, which requires the project to maintain "high scenic integrity," because the project does not call for the construction of any permanent fixtures, like roads, and because the project will retain the project area's forested appearance, simply with a lower density and a greater share of large trees. See AR5-9. The Forest Service Agricultural Handbook, part of the administrative record, indicates that the contemplated kind of tree removal can be consistent with high scenic integrity, see AR4822, 12430-33, 12440-49, 12596-97, and the Los Padres National Forest Plan itself countenances "vegetative treatments" like the project "that reduce stand densification" in order to "maintain[]" the "big tree (old growth) appearance of the Jeffrey pine forests" contained within the project area. AR4979 (adding that "[a]ctive management of vegetation to maintain healthy conifer stands and protect communities is emphasized"). The Forest Service could also for the same reasons, and at a minimum, reasonably conclude that the Cuddy Valley Project meets standard S10, for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

"moderate scenic integrity," because the Forest Supervisor signed the authorization decision and approved the drop of one SIO level.  AR18, AR4779, AR4885-86.[5]

The Forest Service has addressed plaintiffs' concerns for scenic integrity pursuant to the NFMA, and, having considered the relevant factors, concluded that the Cuddy Valley Project complies with the requirements set forth in the governing forest plan.  Its reasoning is sound, and does not reveal any clear error in judgment.  The Forest Service's decision approving the project in accordance with the applicable NFMA SIO standards is therefore not arbitrary or capricious, and the Court will not set aside the approval on this basis.  Forest Guardians, 329 F.3d at 1097.

### (2)   Desired Condition Guidance

Plaintiffs also contend that the Forest Service failed to consider or explain how the Cuddy Valley Project is consistent with the "desired conditions" set forth by forest plan's guidance for the Mt. Pinos Place Management Area.  The Forest Service responds that while it had no obligation to consider or explain compliance with the forest plan's desired conditions guidance since that guidance is not judicially enforceable, its decision

---

[5] Plaintiffs contend that the Forest Supervisor must do more than sign the authorization decision to effectuate the approval of a one-level drop in scenic integrity pursuant to S10.  See Pls. Resp. at 15.  The forest plan is silent as to what kind of action by the Forest Supervisor effectuates authorization for a one-level drop that satisfies S10. Deferring as it must to the Forest Service's interpretation of its own forest plan, Native Ecosystems Council, 418 F.3d at 960, the Court cannot conclude that signing the authorization decision—which indicates, at a minimum, a determination that the project complies with the forest plan's SIO requirements—is not sufficient.

Nor does plaintiffs' contention that the Forest Service found a two-level departure in another case, concerning a purportedly "similar" project in the Frazier Mountain area, change the Court's analysis.  See Pls. Resp. at 15-16.  Reviewing all of the facts, the Forest Service evidently determined that this other project departed more substantially from the aesthetic standards set forth in the applicable forest plan than the present project.  The Court is not in a position to second-guess the Forest Service's reasoning to conclude that the two decisions demonstrate any kind of inconsistency.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
| --- | --- | --- | --- |
| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

memorandum in fact addresses the Mt. Pinos Place desired condition guidance, and finds the project consistent with those guidelines.

At the outset, the Court disagrees with the Forest Service that the specific desired conditions at issue are not legally enforceable. Forest Service regulations implementing the NFMA state that "[e]very project and activity approval document must describe how the project or activity . . . contributes to the maintenance or attainment of[,] . . . or does not foreclose the opportunity to maintain or achieve[,] any . . . desired conditions . . . over the long term." 36 C.F.R. § 219.15(d)(1). The narrative "desired condition" for the Mt. Pinos Place Management Area reads in its entirety as follows:

> **Desired Condition:** The Mt. Pinos Place is maintained as a naturally evolving and naturally appearing landscape that functions as a big tree (old growth) recreation environment. The valued landscape attributes to be preserved over time are the big tree (old growth) Jeffrey pine forested areas, the natural appearing backdrop to rural communities, and the rustic mountain-built environment. Regional habitat linkages are intact and functioning.

AR 4979.

Although the Ninth Circuit has held that an "aspiration" expressed by a forest plan in "discretionary" terms is not legally enforceable in an APA § 706(2) action under 36 C.F.R. § 219.15(d), see In re Big Thorne Project, 857 F.3d 968, 974 (9th Cir. 2017) (citing Heckler v. Chaney, 470 U.S. 821, 832 (1985)), the desired conditions laid out for the Mt. Pinos Place area are not expressed in such terms. The forest plan provides fairly specific guidance for how the landscape is "to be preserved." AR 4979. This is not like the sustainability guidance held to be discretionary (and unenforceable) In Re Big Thorne Project, where the guidance only directed action "where possible." Id. at 974. It is also unlike the "old growth" objective held to be unenforceable in Lands Council v. McNair, 629 F.3d 1070 (9th Cir. 2010), where the objective stated that "10 percent of the Forest will be maintained in old growth *as needed*." Id. at 1076-77 (emphasis added).[6] Both of

---

[6] Lands Council relies upon Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004), which held that "statements to the effect that [a reviewing agency] will conduct [some activity] in designated areas—like other 'will do' projections of agency action set forth in land use plans—are not a legally binding commitment[.]" Id. at 72. The Court notes that while this holding might appear applicable to the "to be" commitments contained

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**    **JS-6**

| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
|---|---|---|---|
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

these cases involved open-ended directives that effectively conferred its application to the discretion of the Forest Service. The desired condition guidance in this case is not couched in a manner that confers comparable discretion.

Having concluded that the desired condition statement is enforceable, the Court now considers whether the Forest Service adequately considered those desired conditions and explained its reasoning supporting a finding of conformance in its decision memorandum. The Court concludes that it did. First, although not raised by the Forest Service, the Court notes that plaintiffs do not appear to have raised conformance with the desired conditions in their comments to the Forest Service during the scoping period, and that waiver could alone prevent this Court from setting aside the project approval on the basis of the Forest Service's response. See U.S. Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 764 (2004) (holding that "[b]ecause respondents did not raise these particular objections" they "therefore forfeited any objection . . . on th[at] ground").

But second, and more critically, the Court finds that the Forest Service addressed the applicable desired conditions in its decision memorandum, and explained why it determined the project complied with those conditions. See generally AR4-5. Specifically, the Forest Service's decision memorandum explains that various existing forest conditions—including the condition of the "existing understory" and "existing fuel loads," the presence of "tight crowns" and "understory fuels ladders" in combination with "continued periods of drought"—establish that the "condition of the timbered stands in the project area" are "at-risk" and "not in line with the goals and desired conditions" set forth in the applicable components of the forest plan. AR4. Although the decision memorandum does not quote from or expressly reference the desired condition statement included in the

───────────────

within the Forest Service's Mt. Pinos Place desired conditions guidance, the Supreme Court's holding in Norton is expressly limited to challenges arising under APA § 706(1) to compel agency action "unlawfully withheld or unreasonably delayed." See Norton, 542 U.S. at 72 (explaining that such commitment language does not create "a legally binding commitment *under § 706(1)*") (emphasis added). The Supreme Court's decision does not address whether "will do" commitment language and the like, standing alone, cannot create an enforceable standard under APA § 706(2). And the Ninth Circuit's application of the principle in that context in Lands Council and In Re Big Thorne Project indicates to this Court that such commitment language may create an enforceable standard, provided it is not open-ended, conditional, and otherwise effectively conferred to the agency's discretion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**     **JS-6**

| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
|---|---|---|---|
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

forest plan—i.e., by listing the "valued landscape attributes," like the "(old growth) Jeffrey pine forested areas," that are to be preserved—the decision memorandum goes on to elaborate, in detail, the ecological conditions necessary to preserve those attributes, including the Jeffrey pine and "big tree" (large-diameter tree) appearance of the project area:

**Desired Conditions**

. . . In the long-term, the desired condition for the national forest land would be to: (1) create forests more resistant to the effects of drought, insect and disease outbreaks and stand killing crown fires; (2) encourage tree recruitment that contain a species mix more like pre-settlement composition, (i.e., with a higher representation of shade-intolerant species such as Jeffrey pine that have declined during the period of fire suppression); (3) recreate stand densities more like those of the pre-suppression era; and (4) encourage a stand structure that emphasizes large-diameter trees.

AR5.

The decision memorandum then explains that the Forest Service must "reduce surface and ladder fuels, reduce fire intensities, and [] make the stands more resilient to wildfire" in order to maintain the project area's desired conditions, AR6, explains how the proposed action would do so, AR6-7, and concludes that the proposed action "is consistent with NFMA and the Forestwide goals, objectives, and standards in the Forest Plan," AR16.

This exposition satisfies the Forest Service's obligation to consider the Los Padres Forest Plan's desired conditions guidance, and to explain how, having considered the relevant factors, the Forest Service concluded that the Cuddy Valley Project complies with those desired conditions. Here, too, the reasoning is sound, and does not reveal any clear error in judgment. The Forest Service's decision approving the project in accordance with the applicable desired conditions is therefore not arbitrary or capricious, and the Court will not set aside the approval on this basis, either. <u>Forest Guardians</u>, 329 F.3d at 1097.

\*     \*     \*     \*     \*

For the foregoing reasons, the Forest Service's determination the project complied with the NFMA was not arbitrary or capricious, and the Forest Service is entitled to summary judgment on plaintiffs' NFMA claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**     **JS-6**

| Case No. | 2:19-CV-6539-CAS-AFMx | Date | May 26, 2020 |
|---|---|---|---|
| Title | MOUNTAIN CMTYS. FOR FIRE SAFETY, ET AL. v. ELLIOTT, ET AL. | | |

## VI.   CONCLUSION

For the foregoing reasons, the Forest Service's motion for summary judgment is **GRANTED** and plaintiffs' motion for summary judgment is **DENIED**. Plaintiffs' motion to strike, as stated above, is **DENIED AS MOOT.**

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |